IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 8:08CV |
| ) | |
| vs. ) | **VERIFIED COMPLAINT** |
| ) | **FOR FORFEITURE** |
| $110,400.00 IN UNITED ) | |
| STATES CURRENCY, ) | |
| ) | |
| Defendant. ) | |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

1. The Court has jurisdiction of this matter pursuant to Title 28, United States Code, Sections 1345, 1355 and 1395, and pursuant to Title 21, United States Code, Section 881.

2. The Defendant is $110,400.00 in United States Currency.

3. The Defendant property is now and will be during the pendency of this action in the judicial district of the State of Nebraska.

4. On or about February 28, 2008, the Defendant property was seized in Douglas County, Nebraska by deputies of the Douglas County Sheriff's Office; the property is currently held by the United States Marshals Service. Immediately after said seizure, administrative forfeiture proceedings were instituted by the United States Drug Enforcement Administration.

5. Mark Perlik has filed a Claim for ownership, pertaining to said Defendant property, with the United States Drug Enforcement Administration.

6. Ecstasy (MDMA) is a controlled substance pursuant to Title 21, United States Code, Section 812.

7. On February 28, 2008, Mark Perlik was in possession of the Defendant property, as proceeds traceable to the exchange of a controlled substance, or alternatively, the Defendant property was used or was intended to be used to facilitate the transportation, sale, receipt, possession, concealment or distribution of a controlled substance, as more particularly described as follows:

    a.    On Thursday, February 28, 2008, at approximately 10:47 a.m., Douglas County Sheriff's Deputy Jason Bargstadt observed a Pontiac G6 bearing Arizona license plate 774XKY traveling westbound on Interstate 80 near 108th Street in Omaha, Douglas County, Nebraska. Deputy Bargstadt determined the Pontiac to be traveling 70 miles per hour in a 60 mile per hour speed zone through the use of his cruiser speedometer and an onboard GPS navigation system. Due to the violation occurring in a dangerous section of I-80, Deputy Bargstadt waited until the Pontiac reached a safer section of I-80. During this time, Deputy Bargstadt pulled his cruiser beside the Pontiac and observed the speed of the Pontiac to decrease dramatically.

    b.    Deputy Bargstadt conducted a traffic stop on the Pontiac for the speeding violation on I-80 westbound near "I" Street. Deputy Bargstadt made contact with the driver/sole occupant of the Pontiac identified by his California driver's license as Mark J. Perlik. Perlik provided a current home address and a rental contract for the Pontiac which was registered to Avis Rental. The rental contract showed the rental return date to be seven days overdue. The

        rental contract showed Mr. Perlik had rented the Pontiac on February 14, 2008, in Santa Cruz, California.

c.    Mr. Perlik agreed to sit in Deputy Bargstadt's cruiser while completing documentation of the traffic stop. Mr. Perlik said he was on his way back to Santa Cruz, California, after visiting his sister in Chicago, Illinois. Mr. Perlik said he spent the last two weeks in Chicago due to his sister getting married the past weekend. Deput Bargstadt noted Mr. Perlik was visibly shaking and having trouble getting his words out.

d.    Mr. Perlik said he had just left Chicago the night before in order to get back to Santa Cruz, California. Mr. Perlik said after he left from Chicago he drove for four hours and then stayed in a hotel in an unknown small town in Iowa. Deputy Bargstadt called the Avis rental company to inquire about the Pontiac which appeared to be overdue. Avis advised the rental was due to expire on February 28, 2008, and Mr. Perlik would have to extend the contract by the end of the day.

e.    Deputy Bargstadt returned all documentation and advised Mr. Perlik he would not be getting a ticket for the speeding violation. Deputy Bargstadt asked if Mr. Perlik had any weapons, drugs or large amounts of money in the Pontiac. Mr. Perlik said he did not. Deputy Bargstadt observed Mr. Perlik's stuttering and body shakes increased as Deputy Bargstadt asked Mr. Perlik questions about contraband. Deputy Bargstadt specifically asked Mr. Perlik if he had anything more than $10,000 in the Pontiac. Mr. Perlik said he did

3

not. Deputy Bargstadt asked Mr. Perlik for consent to search the Pontiac, and informed Mr. Perlik he could deny consent to search. Mr. Perlik denied consent to search the Pontiac. Deputy Bargstadt informed Mr. Perlik a certified narcotics detector dog would be walked around the Pontiac.

f. Deputy Bargstadt deployed K-9 "Voss" around the Pontiac. After the first walk around the Pontiac, Voss stopped on the trunk area and began to crawl underneath the vehicle. Voss then began sniffing the trunk seam and indicated to a narcotic odor emanating from the trunk area of the Pontiac. Deputy Bargstadt asked Mr. Perlik why a drug dog would indicate to a narcotic odor emanating from the Pontiac. Mr. Perlik hesitated and then said he had a pill of ecstasy (MDMA) in his pants pocket within his luggage.

g. Deputy Bargstadt and Sergeat Ed Van Buren began searching the trunk area of the Pontiac. Deputy Bargstadt located a large blue suitcase in the trunk. After opening the suitcase, Deputy Bargstadt located a black book bag. Deputy Bargstadt opened the book bag and found a black trash liner which was tied shut with a knot. Deputy Bargstadt untied the knot and found a folded over paper sack. Deputy Bargstadt opened the paper sack and viewed a large amount of rubber-banded bundles of U.S. currency. Most of the currency was rubber-banded into $1,000 increments which were further banded into $5,000 increments. Deputy Bargstadt and Sergeant Van Buren secured the currency in Sergeant Van Buren's cruiser. Mr. Perlik, along with the mentioned currency, was transported to the Douglas County Sheriff's

4

|   |   |
|---|---|
| | Office to continue the investigation into the concealed currency. The Pontiac was also towed to the Sheriff's Office. |
| h. | Deputy Bargstadt conducted a discretionary sniff of the suspect currency in the Douglas County Sheriff's Office men's locker room. Deputy Bargstadt walked Voss through the men's locker room. Voss sniffed all of the lockers and did not indicate to the odor of narcotics emanating from any of the lockers. Sergeant Van Buren then placed the suspect currency in a locker, while Deputy Bargstadt was out of the locker room. Deputy Bargstadt then walked Voss through the locker room a second time. Voss sniffed all of the lockers and indicated to the odor of narcotics emanating from the locker containing the suspect currency. The Douglas County Sheriff's Office men's locker room has lockers containing circulated and non-circulated currency at all times. |
| i. | Voss is a trained and certified narcotics detector dog. Voss was purchased from Metro Dade K-9 in March 2007. Deputy Bargstadt conducted narcotic detector dog training with Voss during the months of March and April 2007. In April 2007, Voss and Deputy Bargstadt successfully completed a Nebraska State Narcotics Detector Dog Certification course through Sergeant Van Buren. Sergeant Van Buren is a Nebraska State Certified Evaluator and K-9 Trainer. Voss is a passive indication K-9 meaning he sits, stands or stares when indicating to the odor of marijuana, methamphetamine, cocaine and heroin. |

j.  Sergeant Van Buren and Deputy Bargstadt maintained custody and control of the suspect currency until it was turned over to Deputy Dave Wintle and Deputy Kris Peterson on February 28, 2008. Deputies Wintle and Peterson transported the suspect currency to the First National Bank at 133rd and West Maple Road, Omaha, Nebraska, for an official bank count. The official bank count was $110,400.00. A currency denomination form was completed and signed by bank personnel. Bank personnel issued First National Bank cashier's check #1502802 in the amount of $110,400.00 payable to the U.S. Marshals Service, listing the Douglas County Sheriff as the remitter. Deputies Wintle and Peterson took possession of the cashier's check and placed it into the Douglas County Sheriff's Office Property and Evidence Division for storage and safekeeping on the same day, February 28, 2008.

k.  Drug Enforcement Administration Special Agent Brent Fisher and Task Force Officer Kevin Manak responded to the Sheriff's Office and assisted with the investigation. Special Agent Fisher and Task Force Officer Manak met with Mr. Perlik in an investigation room. Mr. Perlik informed the officers he had stuttering issues. Mr. Perlik refused to talk post-Miranda. Mr. Perlik also refused to sign a disclaimer for the currency. Mr. Perlik had no drug related criminal history. Mr. Perlik is a U.S. resident alien born in Czechoslovakia. Mr. Perlik had no weapons in his possession.

l.  Special Agent Fisher and Task Force Officer Manak attempted to fill out a DEA 202 - personal history statement on Mr. Perlik. Task Force Office

6

Manak was obtaining family information from Mr. Perlik. Mr. Perlik said he had a 28 year old sister named Krista Perlik. Task Force Officer Manak asked Perlik where his sister lived. Mr. Perlik said he would be truthful this time and said his sister, Krista Perlik, lived in Campbell, California.

m.  Task Force Officer Manak notes he got this response from Mr. Perlik while completing a DEA 202. Task Force Officer Manak also notes he asked Mr. Perlik the name, age and address of Mr. Perlik's entire family as per the items on the DEA 202. Mr. Perlik was asked the address of his sister and he responded with the additional information he had not been truthful about his sister being in Chicago. Mr. Perlik had previously told Deputy Bargstadt he had traveled to Chicago, Illinois, for his sister's wedding.

n.  Deputies conducted a thorough search of the Pontiac at the Douglas County Sheriff's Office. Deputy Wintle located a small plastic vial within a boot inside of the Pontiac. Inside of the vial were a full tablet, a partial tablet and a capsule containing an unknown powder. Douglas County Sheriff's Office Crime Scene Investigations conducted drug analysis testing of these mentioned tablets and capsule. The full tablet and partial tablet tested positive for containing methylenedioxyamphetamine (MDA). The capsule tested positive for containing methylenedioxymethamphetamine (MDMA).

o.  Deputies also located a cannabis grow bible and a sheet with handwritten grow bible notes for increased productivity which were of evidentiary value in Mr. Perlik's Pontiac rental car. Deputies located a Food Saver vacuum

7

sealer with suspected marijuana residue in the vacuum channel. Douglas County Sheriff's Office Crime Scene Investigations conducted drug analysis testing of vacuum sealer. The residue tested positive for marijuana. A tally sheet was also located with numbers adding up to 110,400, the exact amount of currency located in the car. An envelope in the Pontiac also had instructions hand written on it to include: "no fronts", "count everything", "watch speed limit", "suitcase inside @ hotels", "don't leave it @ hotel by itself", and "if pulled over, can't search". These items were all checked into the Douglas County Sheriff's Office Property and Evidence Division for storage and safekeeping.

p.  Deputies also found copies of Mr. Perlik's 2007 Tax Statement Form W-2. These forms showed Mr. Perlik earning approximately $19,800 from the Los Gatos Brewing Company in 2007. Deputies photocopied these documents and returned this paperwork to Mr. Perlik. Mr. Perlik was in possession of two cellular telephones with the following programmed numbers: (831) 359-9425 and (831) 332-3109. Queries of the DARTS and MSQ data bases for these numbers were negative. An analysis of the information gleaned from these telephones was forwarded in Omaha TWX #0096 dated March 12, 2008.

q.  Mr. Perlik was arrested and charged under Nebraska State Statute for Possession of a Controlled Substance (MDMA and MDA). Mr. Perlik was

transported to the Douglas County Correctional Center for incarceration. The $110,400.00 was seized as drug proceeds.

8. By reason of the foregoing, the Defendant property was used or was intended to be used to commit or facilitate the commission of violations of Title 21, United States Code, Sections 841 and 844. The Defendant property is therefore subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6), and no other property rights should exist in it.

WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be proceeded against for forfeiture in accordance with the laws and regulations of the rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulation; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

JOE W. STECHER
United States Attorney

By: *Nancy A. Svoboda*
NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
(402) 661-3700

## VERIFICATION

STATE OF NEBRASKA    )
                     ) ss.
COUNTY OF DOUGLAS    )

Pursuant to Rule C(2), Supplemental Rules for Certain Admiralty or Maritime and Asset Forfeiture Claims, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states that the facts set forth herein are true and correct according to the best of her knowledge and belief.

NANCY A. SVOBODA  (#17429)
Assistant U.S. Attorney

Subscribed and sworn to before me this 28th day of July, 2008.


PATRICIA A. CARMAN
MY COMMISSION EXPIRES
April 24, 2012

Notary Public

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and that it be calendared accordingly.

NANCY A. SVOBODA
Assistant U.S. Attorney

10